**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Arizona School Boards Association Incorporated,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>Copper State Education Alliance Incorporated,<br><br>　　　　　　　Defendant. | No. CV-24-02502-PHX-SPL<br><br>**ORDER** |

Before the Court is Plaintiff Arizona School Boards Association Incorporated's Motion for Preliminary Injunction. (Doc. 13). Having reviewed the parties' briefing (Docs. 7, 13, 31, 39), and having held an evidentiary hearing on November 26, 2024, the Court now rules as follows.

## I.  BACKGROUND

Plaintiff Arizona School Boards Association, Inc. ("Plaintiff" or "ASBA") provides various services to Arizona ASBA member school districts, including providing a Model Policy Manual (the "Manual"). (Doc. 33 at 3). Plaintiff holds federally registered copyrights on the Manual. (*Id*.). The Manual, which is over 1,100 pages long, compiles state and federal regulations along with ASBA original policy content. (*Id*.). The Manual is designed to allow ASBA member school districts to easily adopt and implement policies in compliance with state and federal laws. (*Id*. at 4). In order to use the Manual, member schools must enter into a subscription agreement with ASBA. (*Id*. at 5).

Plaintiff alleges that Defendant Copper State Education Alliance, Inc. ("Defendant") is a new competitor of the ASBA. (*Id*.). Plaintiff further alleges that after a long-time ASBA member and Manual subscriber, Creighton Elementary School District ("Creighton"), submitted a notice to terminate its membership and subscription in June 2024, Plaintiff discovered substantial sections of the Manual's copyrighted content on Creighton's website. (Doc. 33 at 5–8). Plaintiff determined that Defendant was the source of the infringing Manual and was hosting the infringing content (the "Creighton Policy") on its website without proper authorization from Plaintiff. (*Id*. at 8). In August 2024, Plaintiff sent cease-and-desist letters to Defendant, Creighton, and Creighton's board. (*Id*. at 9–10).

On August 21, 2024, Plaintiff alleges that Defendant's legal counsel told Plaintiff's legal counsel that Defendant would remove the Creighton Policy by the end of the week. (*Id*. at 10). Plaintiff further alleges that thereafter, Defendant agreed by sworn affidavit to cease infringing the copyrighted Manual, but then subsequently presented the allegedly infringing Creighton Policy as its own to compete for other ASBA clients and continued to publicly display the Creighton Policy on its website. (*Id*. at 13–15). On September 19, 2024, Plaintiff filed its Complaint alleging a claim of copyright infringement in violation of 17 U.S.C. § 501 and a claim of tortious interference with prospective economic advantage. (Doc. 1 at 13–15). On September 20, 2024, Plaintiff filed the present Motion for Preliminary Injunction seeking to enjoin Defendant from using the infringing content. (Doc. 13).

On November 4, 2024—the same day Defendant responded to the present Motion—Plaintiff filed its Amended Complaint, which retains only the copyright infringement claim and seeks (1) a permanent injunction prohibiting Defendant from using the Manual and (2) actual and statutory monetary damages. (Doc. 33 at 24–25). The Amended Complaint provides that Creighton ultimately did not terminate its ASBA membership and subscription despite submitting an initial notice of termination. (*Id*. at 23). The Amended Complaint also alleges that Defendant implemented major changes to the Creighton Policy

displayed on its website—such as revised wording and formatting, new language, and redactions—at some point between Plaintiff's observations on September 9 and October 9, 2024. (*Id.* at 15–20). Additionally, it asserts that on October 10, 2024, Plaintiff identified 71 instances of verbatim infringement on Defendant's website. (*Id.* at 20–21). On November 2, 2024, Plaintiff discovered that public access to the subject infringing material had finally been removed. (*Id.* at 23). On November 26, 2024, the Court held an evidentiary hearing on the Motion and took the matter under advisement. (Doc. 43).

## II. LEGAL STANDARD

A party seeking injunctive relief must show that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "The Ninth Circuit weighs these factors on a sliding scale, such that where there are only 'serious questions going to the merits'—that is, less than a 'likelihood of success' on the merits—a preliminary injunction may still issue so long as 'the balance of hardships tips *sharply* in the plaintiff's favor' and the other two factors are satisfied." *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (citing *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

## III. DISCUSSION

### a. Likelihood of Success on the Merits

To meet this factor, Plaintiff need only show a likelihood of success on the merits—or serious questions—as to one of its claims for relief. To present a prima facie case for copyright infringement, a plaintiff must (1) show ownership of the allegedly infringed material, and (2) demonstrate that the alleged infringer violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106. *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020*)*; *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) (citing 17 U.S.C. § 501(a)). Under § 106, copyright owners have the exclusive rights to reproduce copies of the work, distribute copies, and display the work publicly, among others. 17 U.S.C. § 106.

Plaintiff asserts that it owns federally registered copyrights in the Manual and attached the certificate of registration to the Amended Complaint. (Doc. 33-1 at 2); *see Desirous Parties Unlimited Inc. v. Right Connection Inc.*, No. 221CV01838GMNBNW, 2022 WL 4110370, at *6 (D. Nev. Sept. 7, 2022), *aff'd*, No. 22-16530, 2023 WL 4285504 (9th Cir. June 30, 2023) ("A certificate of copyright registration constitutes prima facie evidence of a copyright's validity, creating a rebuttable presumption of validity."). Defendant does not challenge that Plaintiff has a valid copyright. (Doc. 31 at 8). Thus, Plaintiff has satisfied the first element of an infringement claim.

With respect to the second element of its infringement claim, Plaintiff asserts that Defendant violated its copyright by publicly displaying the Manual without authorization. (Doc. 33 at 24). To demonstrate that a defendant violated a copyright, a plaintiff must provide evidence of (1) actual copying; and (2) unlawful appropriation, which requires demonstrating that the works share substantial similarities. *Skidmore*, 952 F.3d at 1064. Plaintiffs can prove copying by direct evidence or circumstantial evidence, such as showing that defendants had access to the work and that the works share a probative or striking similarity that is due to "copying rather than . . . coincidence, independent creation, or prior common source." *Id.* (citations and quotations omitted).

Plaintiff alleges that Defendant's attorney, who previously performed pro bono work for Plaintiff, "had unfettered access to Manual during his tenure at ASBA." (Doc. 7 at 12). Plaintiff also alleges that "verbatim copies of at least substantial portions of the Manual" were presented on Defendant's website. (*Id.*). Defendant has also conceded that the Creighton Policy is derived from Plaintiff's Manual. (Doc. 31 at 9). Thus, Plaintiff can likely establish that the "copying" factor is satisfied.

To prove unlawful appropriation, plaintiffs must satisfy an additional two-part test to determine whether the defendant's work is substantially similar to the plaintiff's work. *Skidmore*, 952 F.3d at 1064. Under step one, the "intrinsic test," courts assess the similarity of expression from an ordinary reasonable observer's perspective. *Id.* Under the second step of the substantial similarity test—called the "extrinsic test"—courts must compare

"the objective similarities of specific expressive elements in the two works." *Id.* "Crucially, because only substantial similarity in protectable expression may constitute actionable copying that results in infringement liability, 'it is essential to distinguish between the protected and unprotected material in a plaintiff's work.'" *Id.* (citations and quotations omitted).

Works that incorporate or compile many unprotectable facts—such as state and federal regulations—still qualify for copyright protection if they possess at least some minimal degree of creativity. *Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC*, 672 F. Supp. 3d 1035, 1048 (S.D. Cal. 2023) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). However, such works generally afford only "thin" copyright protection. *Id.* "When a work as a whole is entitled to thin protection but the facts within it are unprotected, competitors may copy those facts" if the competing work does not feature the same precise words, selection, or arrangement of those facts. *Id.* at 1048–49. In applying the extrinsic test to thinly protected works, courts often require "virtual identity" rather than "substantial similarity" to find infringement, which requires "verbatim reproduction or very close paraphrasing." *Id.* at 1049 (citing *Landsberg v. Scrabble Crossword Game Players, Inc.*, 736 F.2d 485, 488 (9th Cir. 1984)).

Another district court in this Circuit assessed infringement in a case where a defendant published various automobile feature comparisons prepared by the plaintiff without authorization. *Advanta-STAR*, 672 F. Supp. 3d at 1042. The court determined that the defendant had infringed one of the comparison works under the "virtual identity" analysis, despite finding that the infringing work contained several fewer categories of car features than the original, because the remaining sections were "substantively identical and arranged in nearly the same order." *Id.* at 1049. Although the infringing work presented "a few facts in a slightly different manner and add[ed] a small number of new sentences," the court found that "these instances of originality are overwhelmingly outnumbered by those instances in which Defendants' word choices, phrasing, and arrangement of information are nearly identical to Plaintiff's." *Id.* at 1052.

Again, Plaintiff has demonstrated a likelihood of success on the merits with respect to the unlawful appropriation prong. Although Plaintiff's Manual compiles or incorporates many unprotectable facts, which likely warrants "thin" protection, in its Reply and Amended Complaint, Plaintiff asserts that more than 70 verbatim "original registered works of the ASBA remained for public consumption" on Defendant's website until November 1, 2024. (Docs. 39 at 2; 33 at 21). In support, Plaintiff provided a chart detailing the several Manual provisions the Policy adopted verbatim or with minor language or formatting changes. (*See* Doc. 7-3 at 5–7). Taking Plaintiff's allegations as true, even if the Policy has minor language and formatting changes, Plaintiff has demonstrated a likelihood of success on the unlawful appropriation element.

Defendant argues that it merely provided consulting services with Creighton to adapt the school district's policy to meet its specific needs and indicated that the altered Creighton Policy may be transformed to the extent that it is Creighton's property, not Plaintiff's. (Doc. 31 at 8–9). However, Defendant has yet to demonstrate that the Creighton Policy is sufficiently altered as to no longer belong to Plaintiff, especially in light of Plaintiff's allegations that the Creighton Policy consists in large part of verbatim copies of Manual content. (See Doc. 33 at 20–21). Moreover, Defendant repeatedly emphasized at the Preliminary Injunction Hearing on November 26, 2024 that Creighton still has a license to use Plaintiff's Manual and that Defendant has never represented the Manual or Creighton Policy as its own intellectual property. (Doc. 48 at 70–71).

Copyright infringement claims do not require a defendant to represent the work as its own; instead, violating one of the exclusive rights outlined in § 106 sufficiently constitutes infringement. *See generally Broadcast Music, Inc. v. McDade & Sons, Inc*., 928 F. Supp. 2d 1120, 1131 (D. Ariz. March 6, 2013) ("Customer confusion is not the standard for copyright infringement."); *Hunley v. Instagram, LLC*, 73 F.4th 1060, 1070 (9th Cir. 2023) (discussing cases finding that hosting and displaying a copyrighted work on defendants' websites constitutes infringement of the public display right). Additionally, when a copyright owner provides a party a license to use or display its copyrighted work,

that party cannot transfer that license without authorization of the licensor. *See Miller v. Glenn Miller Prods.*, 318 F. Supp. 2d 923, 933 (C.D. Cal. 2004), *aff'd sub nom. Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975 (9th Cir. 2006) ("It is well established in patent and copyright law that a patent or copyright licensee may not sub-license his licensed intellectual property rights without express permission from the licensor."). Thus, regardless of whether Defendant ever represented the Manual or Creighton Policy as its own, Defendant allegedly publicly displayed Plaintiff's copyrighted work on its website by hosting the Creighton Policy. (Doc. 33 at 24). To that end, Creighton cannot issue Defendant a license to publicly display Plaintiff's work without Plaintiff's permission: Plaintiff attached its Manual Subscription contract with Creighton to its Amended Complaint, which provides that when a member school district adopts the Manual's policies, the content "remain[s] the copyright of the ASBA and [is] licensed to the District solely during the period of this subscription agreement." (Doc. 33-2 at 4). Plaintiff affirmed at the Preliminary Injunction hearing that Defendant never had permission to publicly display the Manual on its website. (Doc. 48 at 68–69). Thus, there is no evidence that Defendant had a license to publicly display Plaintiff's copyrighted work, even if Defendant's client, Creighton, retains a license to do so. All told, Plaintiff has demonstrated a likelihood of success—or at least a serious question to the merits—on its copyright infringement claim.

### b. Irreparable Harm

"To show irreparable harm, '[a] plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief.'" *Forefront Dermatology S.C. v. Crossman*, 642 F. Supp. 3d 947, 949 (D. Ariz. 2022) (alteration in original) (quoting *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)). Parties are not entitled to a presumption of irreparable harm by establishing a likelihood of success on the merits for copyright infringement claims. *See Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013).

Moreover, a plaintiff must establish that "remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *Bean v. Pearson Educ., Inc.*, No. CV 11-8030-PCT-PGR, 2011 WL 1211684, at *2 (D. Ariz. Mar. 30, 2011) (citation omitted). In the context of copyright infringement, injuries such as jeopardy to a company's competitive position or a more-than-speculative risk of losing customers, goodwill, or reputation may constitute irreparable harm. *Id*. Evidence of past infringement or a mere likelihood of future infringement does not allow for an inference of irreparable harm, because infringement can be redressed via actual or statutory damages. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1215 (C.D. Cal. 2007).

In this case, Plaintiff fails to demonstrate imminent, irreparable harm. Plaintiff's Motion notes that one of its customers, Creighton, utilized Defendant's services in adopting the copyrighted material. (Doc. 7 at 12–13). However, if Plaintiff intends for the Court to infer irreparable harm from the loss of a client, such an inference is unjustified: the Amended Complaint is clear that Creighton never terminated its use of Plaintiff's policy services despite initially submitting a notice of intent to terminate. (Doc. 33 at 23). As this statement merely demonstrates that Creighton, a common client of both Plaintiff and Defendant, used material it was licensed to use, it is not evidence of irreparable harm. At the November 26, 2024 Preliminary Injunction hearing, Plaintiff further argued that it faces a risk of irreparable harm by losing subscriber school districts. (Doc. 48 at 10). However, Plaintiff also acknowledged that the risk of losing subscribers arises when the contracts come up for renewal every four years. (*Id*. at 12). The Court is unconvinced that this risk poses an immediate injury warranting the extraordinary remedy of injunctive relief.

Moreover, the irreparable harm a plaintiff seeks to remedy with injunctive relief must be a harm to its legal copyright interests. *Garcia v. Google, Inc.*, 786 F.3d 733, 744 (9th Cir. 2015) ("[T]here is a mismatch between her substantive copyright claim and the dangers she hopes to remedy through an injunction. Garcia seeks a preliminary injunction under copyright law . . . Hence, Garcia's harm must stem from copyright—namely, harm

8

to her legal interests as an author."). Like in *Garcia*, here, there is a mismatch between Plaintiff's substantive copyright claim and the harm it seeks to remedy through injunctive relief. To the extent that some of Defendant's conduct—consulting with Plaintiff's clients to help them tailor the Manual to their needs—poses a risk that Plaintiff will lose subscribers, Plaintiff fails to explain how such conduct, even if harmful, violates its copyright interests. Plaintiff does not appear to argue that its copyright interests are infringed by its subscriber school districts engaging third-party consultants to assist with altering and adapting the Manual to form their policies. Nor does Plaintiff argue that making such alterations infringes its copyright interests; Plaintiff even admits that "[i]f a subscriber school district makes sufficiently transformative changes to a model policy to adapt to its individual needs, the revised policy created by the school district becomes the intellectual property of that school district and not of the ASBA." (Doc. 33 at 5). Plaintiff fails to explain how any risk of potential lost customers stemming from Defendant's services assisting school districts with altering their policies—not Defendant's alleged infringing conduct of publicly displaying large portions of the Manual on its website—harms the ASBA's copyright interests. To that end, it is unclear how Plaintiff's alleged irreparable harm would be remedied if the Court enjoined Defendant from publicly displaying the Creighton Policy on its website. Defendant apparently could help Plaintiff's clients "make sufficiently transformative changes" to Plaintiff's manual such that the revised policies belong to the clients, rather than Plaintiff, without ever publicly displaying the policies or other Manual Content online. (*Id.*). In that event, Defendant would not be engaged in its allegedly infringing conduct, and Plaintiff would face the same risk of customer loss.

In sum, Plaintiff has not persuaded the Court that the irreparable harm it alleges is sufficiently immediate to warrant injunctive relief or that the risk of losing subscribers arises from Defendant's infringing activity, rather than Defendant's consulting services. Furthermore, the Court is not convinced that monetary damages are inadequate to remedy the harm to Plaintiff's copyright interests. As such, Plaintiff has not satisfied the irreparable

9

harm factor necessary to obtain preliminary injunctive relief.

### c. Balance of Equities and Hardships and Public Interest

Before issuing a preliminary injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. "[A] defendant who knowingly infringes another's copyright cannot complain of the harm that will befall it when properly forced to desist from its infringing activities." *Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 829 (9th Cir. 1997) (cleaned up); *see also Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 867 (9th Cir. 2017) (holding that there is a "long-settled principle that harm caused by illegal conduct does not merit significant equitable protection.").

Additionally, the public interest favors issuance of an injunction. "[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in the protected work." *Warner Bros. Ent. Inc. v. WTV Sys., Inc.*, 824 F. Supp. 2d 1003, 1015 (C.D. Cal. 2011) (citations omitted). Continued open trampling of these copyright protections harms the public.

Thus, because Plaintiff has shown a likelihood of success (or at least serious questions) on the merits of its infringement claim, these two factors weigh in favor of granting injunctive relief. However, as Plaintiff has failed to satisfy the irreparable harm factor, injunctive relief is inappropriate at this time.

### IV. CONCLUSION

In sum, the Court finds that Plaintiff has failed to demonstrate that it is entitled to injunctive relief at this stage. Plaintiff did not make a clear showing of immediate, irreparable harm. Therefore, although Plaintiff has established a likelihood of success on the merits of its copyright infringement claim, and the public interest and balance of equities factors weigh in favor of Plaintiff, Plaintiff's failure to meet the second *Winter* factor entails that a preliminary injunction is inappropriate. Having considered all of the evidence and the arguments of the parties, and having individually considered the *Winter*

factors with respect to both claims for injunctive relief, the Court finds that Plaintiff is not entitled to a preliminary injunction. Accordingly,

**IT IS ORDERED** that Plaintiff Arizona School Board Association Incorporated's Motion for Preliminary Injunction (Doc. 13) is **denied.**

**Dated this 5th day of December, 2024.**

Honorable Steven P. Logan
United States District Judge